1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8   ORACLE CORPORATION, ET AL.,              No. C 11-00910 JCS

9              Plaintiffs,                   **ORDER GRANTING IN PART AND
                                             DENIED IN PART PLAINTIFFS'**
10          v.                               **MOTION TO DISMISS AND STRIKE
                                             DRUGLOGIC'S SECOND AMENDED**
11  DRUGLOGIC, INC.,                         **DEFENSES AND COUNTERCLAIMS
                                             [Docket No. 79]**
12             Defendant.
    _____/

13

14

15  I.      INTRODUCTION

16          Plaintiffs Oracle Corporation and Oracle International Corporation ("Oracle") filed this

17  action against Defendant DrugLogic, Inc. ("DrugLogic") alleging  infringement by DrugLogic of

18  Oracle's U.S. Patent No. 6,684,221 ("the '221 patent") and seeking a declaratory judgment of non-

19  infringement and invalidity as to  DrugLogic's U.S. Patent No. 6,789,091 ("the '091 patent").  In

20  response, DrugLogic asserted various affirmative defenses and counterclaims, the sufficiency of

21  which Oracle challenged in a motion to dismiss and strike filed in May 2011.  The Court granted in

22  part and denied in part Oracle's motion, dismissing certain counterclaims and affirmative defenses

23  with leave to amend.   *See* Docket No. 54 ("the August 8 Order").  Presently before the Court is

24  Oracle's Motion to Dismiss and Strike Druglogic's Second Amended Defenses and Counterclaims

25  ("the Motion").  The Court finds the Motion appropriate for disposition without oral argument

26  pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED in part

27  and DENIED in part.

28

United States District Court

For the Northern District of California

II.     **BACKGROUND**[1]

        A.      **The Court's August 8, 2011 Order**

        In its August 8 Order, the Court addressed the adequacy of various affirmative defenses and counterclaims asserted by DrugLogic in its original answer.  With respect to DrugLogic's inequitable conduct affirmative defense and counterclaim, which was based on the theory that Oracle had withheld material information from the patent examiner during the application process, the Court found DrugLogic's allegations were insufficient under *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009) and Federal Rule of Civil Procedure 9(b).  August 8 Order at 17.  In particular, the Court held that DrugLogic had not sufficiently alleged the "what" and "where" of the alleged inequitable conduct, stating that "[a]lthough DrugLogic identifies potentially material information contained in the allegedly withheld references by noting that WHO-Drug, COSTART, Read Codes, CPT, Unified Medical Language System, Metathesaurus, MeSH, and PubMed are all 'hierarchical relational medical thesauruses,' some of which contain 'clinical terms used in conjunction with clinical studies,' DrugLogic fails to allege where specifically in those references that material information could be found." *Id*.  The Court went on to hold that DrugLogic had not sufficiently alleged the "why" and "how" of its inequitable conduct defense.  *Id*. at 18.  In particular, the Court found that DrugLogic had not alleged "any facts to support an inference that the information allegedly withheld from the PTO is not cumulative of other information previously disclosed to the examiner, particularly given that Oracle referenced WHO-Drug, COSTART, and CPT in the '221 patent specification." *Id*.  As to the question of whether DrugLogic's allegations were sufficient to give rise to an inference of deceptive intent, the Court held: "[A]lthough this is a close question, the Court finds that if DrugLogic has adequately pled knowledge as described above, no additional pleading will be necessary with respect to deceptive intent." *Id*. at 19.  The Court dismissed the counterclaim and struck the affirmative defense based on inequitable conduct and granted DrugLogic leave to amend its inequitable conduct allegations.  *Id*. at 25.

---

[1]A more detailed overview of the procedural background of the case is included in the Court's August 8, 2011 Order.

**B.      DrugLogic's Second Amended Answer**[2]

In its Second Amended Answer, Defenses, Counterclaims and Demand for Jury Trial of Defendant and Counterclaimant DrugLogic, Inc. ("SAA"), Druglogic offers  more detailed allegations regarding the patentee's alleged failure to disclose material information to the patent examiner and asserts a number of new state law counterclaims, including a counterclaim for unfair competition.

DrugLogic's amended  inequitable conduct allegations including the following:

34. The provisional application from which the '221 Patent claims priority, U.S. Provisional Application No. 60/132,926, filed by inventor Kim Rejndrup and his patent counsel Rodney Johnson, identifies MedDRA, WHO-Drug, WHO-Art, ICD9, ICD10 and COSTART as "hierarchical structured dictionaries."

35. MedDRA, WHO-Art and COSTART were and are all hierarchical relational medical thesauruses, and all of them contain clinical terms that are or have been used in or derived from clinical studies. Inventor Kim Rejndrup and his patent attorneys Rodney Johnson and Christopher Lutz knew that MedDRA, WHO-Art and COSTART were and are hierarchical relational medical thesauruses, and that they contain clinical terms that are or have been used in or derived from clinical studies.

. . .

44. The information withheld -- that WHO-Art, COSTART, and MedDRA were and are hierarchical relational medical thesauruses that contain clinical terms used in conjunction with or derived from clinical studies -- is relevant to claims 1, 21, 51 and 53, and in particular to the limitations of those claims that require (i) defining (or identifying) a plurality of clinical terms for a clinical study and (ii) storing the plurality of terms in a memory according to a hierarchy of relations. WHO-Art, COSTART, and MedDRA are medical thesauruses, and each of them contain clinical terms used in conjunction with or derived from clinical studies. In order for these clinical terms used in conjunction with or derived from clinical studies to have been entered into WHO-Art, COSTART, and MedDRA, the clinical terms for clinical studies were first identified and then stored in a memory according to a hierarchy of relations.

45. The withheld information -- that WHO-Art, COSTART, and MedDRA are hierarchical relational medical thesauruses that contain clinical terms used in conjunction with or derived from clinical studies – is present at, and can be found in, any portion of WHO-Art, COSTART, and MedDRA. That is, just as the fact that Roget's Thesaurus is a thesaurus containing  English-language words can be ascertained from virtually any page in Roget's Thesaurus, the fact that WHO-Art, COSTART and MedDRA are hierarchical relational medical thesauruses containing clinical terms used in or derived from clinical studies would

---

[2]On September 2, 2011, DrugLogic filed a First Amended Answer.  *See* Docket No. 71. Following a meet and confer, the parties stipulated to the filing of a Second Amended Answer to address certain concerns expressed by Oracle relating to the sufficiency of the amended counterclaims and defenses.  *See* Docket No. 75.  The Second Amended Answer was filed on September 23, 2011.

be immediately perceived by someone reviewing any portion of the contents of WHO-Art, COSTART or MedDRA. For example, if one were to look up in MedDRA the clinical term "cardiac flutter," a term associated with certain clinical studies, one would find that the term is categorized in a hierarchical structure, with synonyms (reflecting that MedDRA is a thesaurus) and related terms having the same level of detail or specificity categorized at the same level, and with related terms having broader meanings (reflecting that MedDRA is relational) categorized at correspondingly "higher" levels (reflecting that MedDRA is hierarchical). One would find similar clinical terms and organization with COSTART and WHO-ART. Inventor Kim Rejndrup and his patent lawyers were aware of the content and organization of WHO-Art, COSTART and MedDRA, specifically that they were relational medical thesauruses containing clinical terms, and they knew that this information was material to the claims of the '221 Patent.

46. The information withheld is material because if the patent examiner had been aware of the actual nature of the withheld information, that is, that WHO-Art, COSTART, and MedDRA are each a hierarchical relational medical thesaurus that contains clinical terms used in conjunction with or derived from clinical studies, the examiner would not have allowed the claims to issue in their present form. Instead, the examiner would have found that the withheld information provides a teaching that was absent from the prior art relied upon by the examiner, and he would have rejected the claims instead of allowing them.

47. Specifically, the examiner allowed the claims only after the words "clinical terms" and "clinical studies" were added to the claims. If the examiner had been told that WHO-Art, COSTART, and MedDRA were medical thesauruses that contain clinical terms from clinical studies, the examiner would have maintained the rejections and not allowed the claims to issue.

48. The information withheld is not cumulative to other information provided to the examiner because neither inventor Kim Rejndrup nor his patent attorneys Rodney Johnson and Christopher Lutz provided any prior art to the USPTO, and because the incomplete disclosure of WHO-Drug, COSTART and CPT in the specification of the '221 Patent fails to make any reference to WHO-Art or to MedDRA, and it fails to state that any of them are thesauruses of medical or clinical terms. The incomplete description and disclosure of the prior art materially misrepresents its nature and scope and fails to put the examiner on notice of its relevance. Indeed, it undoubtedly led the examiner to the conclusion that this prior art was not relevant.

49. The information withheld is not cumulative to other information cited by the examiner because none of the prior art cited by the examiner was or disclosed a medical thesaurus containing clinical terms, in which medical (including clinical) terms are stored according to a hierarchy of relations, including relations indicative of associations between medical (including clinical) terms.

50. On information and belief, the failure of inventor Kim Rejndrup and his patent attorneys Rodney Johnson and Christopher Lutz, to provide copies of or excerpts from one or more of the WHO-Art, COSTART, and MedDRA hierarchical relational medical thesauruses to the U.S. Patent and Trademark Office, and their failure to advise the U.S. Patent and Trademark Office that WHO-Art, COSTART, and MedDRA contain clinical terms used in conjunction with or derived from clinical studies, were intentional acts or omissions, done with deceptive intent.

SAA, ¶¶ 34-35, 44-50.

4

United States District Court

For the Northern District of California

**C.     The Motion**

In the Motion, Oracle argues that: 1)  Druglogic's counterclaim and affirmative defense of inequitable conduct should be dismissed (as to the counterclaim) and stricken (as to the affirmative defense) on the basis that the specific allegations addressing what was not disclosed to the Patent and Trade Office ("PTO") show that Oracle did not, in fact, withhold any material information from the PTO and therefore, the allegations do not give rise to an inference of deceptive intent; 2) DrugLogic's allegation of common law unfair competition in its Sixth Claim for Relief should be dismissed because under *Bank of the West v. Superior Court*, 2 Cal. 4th 1254 (1992), unfair competition claims asserted under common law are limited to the act of "passing off," and no passing off has been alleged here; and 3) DrugLogic's requests for damages on its unfair competition counterclaim and for injunctive relief on its breach of contract counterclaim should be stricken because these remedies are not available on DrugLogic's claims.  Motion at 2-3.

**1.     Inequitable Conduct Allegations**

Oracle argues that the new details added to DrugLogic's allegations do not save the defense and counterclaim but instead reveal that they are factually implausible under the standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  *Id*. at 5.  According to Oracle, DrugLogic's theory  – that the inventor and others who prosecuted the patent hid from the Patent Office the fact that prior art systems described in the '221 specification "were and are all hierarchical relational medical thesauruses  . . [that] contain clinical terms that are or have been used in or derived from clinical studies" – is demonstrably false on the face of the '221 patent because it is clear from the specification that all of the prior art references are: 1) medical thesauruses; 2)  "hierarchical"; and 3) relational.  *Id*.  It is also clear from the specification, Oracle argues, that they contain clinical terms derived from clinical studies.  *Id*.

To show that it would have been apparent to the patent examiner that the systems described in the prior art referenced in the '221 patent were medical thesauruses, Oracle points to the titles of the systems used in the specification.  *Id*. (citing '221 Pat., col. 4, lines 4-10 ("Common vendor-supplied dictionaries include WHO-Drug (World Health Oragnization Drug Dictionary) by the

World Health Organization, COSTART (Coding Symbols for a Thesaurus of Adverse Reaction Terms) by the Drug Information Association, and CPT (Current Procedural Terminology) by the American Medical Association")). *Id*. Oracle rejects DrugLogic's suggestion that the nature of the systems referenced in the specification would not have been apparent to the patent examiner because they were referred to as dictionaries rather than thesauruses, *id*. (citing SAA ¶¶ 34-35), pointing out that one of the systems contains the word "thesaurus" in its title; to the extent that the other systems are referred to as dictionaries, Oracle asserts, this is an accurate description of these systems as they contain the word "dictionary" in their titles, and therefore, no deceptive intent can be inferred from referring to this prior art as such. *Id*.

It is also clear from the face of the specification that the prior art systems were hierarchical, Oracle argues. *Id*. at 7. Oracle points to Figures 1 and 2 and the accompanying text in the specification that describes these figures in support of its position. *Id*. (citing '221 Pat., col. 4, lines 12-16 ("Fig. 1 shows the various entities that interact with the classification and mapping system, and Fig. 2 shows the structure of a vendor-supplied dictionary used with such a system. Referring to Figs. 1 and 2, the hierarchical structure of the WHO-Drug dictionary 44 is shown").

Oracle further contends that it is was apparent from the specification that the prior art systems contained clinical terms that are or have been used in or derived from clinical studies. *Id*. In particular, Oracle argues that the "patent explicitly states that the purpose of the prior art systems in the claimed invention is to load clinical terms into that invention [and therefore] those systems must contain clinical terms." *Id*. (citing '221 Pat., col 3, lines 40-43 ("The ***clinical terms*** are initially transmitted to the thesaurus database 18 from an external media source, such as a CD-ROM 40, from a loader 42""); col. 4, lines 16-18 ("***Clinical terms*** are read from the CD-ROM 40 and stored in the content table 20"); col. 5, lines 10-12 ("Referring to Figs. 1 and 5, a dictionary of ***clinical terms*** is loaded into the thesaurus database 18") (emphasis added in Motion)).

Finally, Oracle argues that the '221 specification disclosed that the prior art systems were relational, quoting the following language in the specification:

FIG. 1 shows the various entities that interact with the classification and mapping system, and FIG. 2 shows the structure of a vendor supplied dictionary used with such a 15 system. Referring to FIGS. 1 and 2, the hierarchical structure of the WHO-Drug dictionary 44 is shown. Clinical terms are read from the CD-ROM 40 and stored in the content table 20. ***Relations between the clinical terms are also read*** and stored in the relation table 22 to define relations between terms on different levels 46, as defined by the hierarchy. In this manner, both the content and the hierarchical structure of the dictionary 44 are transmitted to the thesaurus database 18 via the loader 42 and stored in the content table 20 and the relation table 22.

*Id.* (quoting '221 Pat., col. 4, lines 12-24)(emphasis added in Motion).

Because all of the allegedly withheld information was in fact disclosed to the patent examiner in the specification, Oracle argues, DrugLogic has failed to allege a material omission or misrepresentation; therefore, its inequitable conduct claim should be dismissed.  *Id.* at 9 (citing *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 2006 WL 3780715, at * 3-4 (N.D. Cal. Dec. 20, 2006), *Chiron Corp. v. Genentech, Inc.,* 286 F. Supp. 2d 1126, 1137 (E.D. Cal. 2002)).  Oracle further asserts that in the absence of any factual allegations showing a material misrepresentation or omission, DrugLogic's allegations also do not support a plausible inference of intent to deceive.  *Id.* Oracle points out that under *Exergen*, to state a claim for inequitable conduct, DrugLogic's factual allegations must "plausibly suggest '[a] deliberate decision to withhold a known material reference or to make a knowingly false misrepresentation."  *Id* (quoting *Exergen*, 575 F.3d at 1331 (internal quotations omitted)).

### 2.    Unfair Competition Counterclaim

Oracle argues that DrugLogic has improperly combined in Counterclaim Six a statutory unfair competition claim under Cal. Bus. & Prof. Code §§ 17200 *et seq*. with a common law unfair competition claim.  *Id.*  at 10.  The latter claim fails, Oracle asserts, because the California Supreme Court has limited unfair competition claims under common law to the act of "passing off" one's goods as those of another.  *Id.* (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992)).  Oracle contends that because there is no allegation that Relsys or Oracle engaged in "passing off" their goods as those of DrugLogic, DrugLogic's claim for common law unfair competition should be dismissed.

**United States District Court**

For the Northern District of California

### 3.      Improper Remedies

#### a.      Injunctive Relief for Breach of Contract

Oracle argues that DrugLogic's requested relief on Counterclaim II, for breach of contract, improperly includes a request for injunctive relief.  *Id*. at 11 (citing SAA Counterclaim II Requested Relief, ¶ B ("seeking "[a]n injunction prohibiting Oracle . . .from further use of DrugLogic's confidential information and the software created through Relsys's impropert reverse engineering and decompiling")).  According to Oracle, injunctive relief is available on a breach of contract claim only where a plaintiff adequately alleges entitlement to specific performance under the contract.  *Id*. (citing Cal Civ. Code Section 3423(e) ("[a]n injunction may not be granted . . .[t]o prevent the breach of a contract the performance of which would not be specifically enforced"), *Golden West Baseball Co. v. City of Annaheim*, 25 Cal. App. 4th (1994) ("[a]n injunction to enforce the terms of a contract may only be issued if the contract is specifically enforceable")).  Because DrugLogic has not alleged specific facts showing that it is entitled to specific enforcement and in particular, has not alleged any ongoing conduct that would be subject to specific performance, Oracle contends that this relief should be stricken from DrugLogic's breach of contract counterclaim.  *Id*. (citing *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983) for elements required for specific performance).

#### b.      Compensatory Damages for Unfair Competition

Oracle argues that the Court should strike DrugLogic's request for "an award disgorging any benefit received by Oracle as a result of its unfair competition" as a remedy on Counterclaim VI, for unfair competition.  *Id*. at 12.  Oracle argues that California's statutory unfair competition law ("UCL"), only authorizes "two forms of equitable relief: *preventive*., i.e., an injunction, and *restorative*, ie., an order for restitution."  *Id*. (citing *Silvaco Data Sys. v. Intel Corp*., 184 Cal. App. 4th 210, 244 (2010) and Cal. Bus. & Prof. Code Section 17203).  The UCL does not authorize compensatory relief, Oracle contends.  *Id*.  Moreover, Oracle argues, California courts have expressly limited "restitution" to "orders compelling a [Section 17200] defendant to return money obtained through an unfair business practice to those persons in interest from whom the property

1    was taken, that is, to persons who had an ownership interest in the property or those claiming

2    through that person." *Id*. (quoting *Krause v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27

3    (2000)).  Because the monetary relief requested by DrugLogic falls outside the scope of the

4    monetary relief available under the UCL, Oracle contends, the request for disgorgement should be

5    stricken.

6         **C.      Opposition**

7         In its Opposition, DrugLogic contends that: 1) its  amended  inequitable conduct allegations

8    are sufficient to remedy the deficiencies identified by the Court in its August 8 Order; 2) its unfair

9    competition claim does not fail to the extent it is based on common law because the *Bank of the West*

10   case does not apply; 3) DrugLogic's request for an order disgorging benefits under its unfair

11   competition claim does not fail because it is based on its common law unfair competition claim and

12   not its statutory claim under Cal. Bus. & Profs. Code §§ 7200 *et seq*.; and 4) DrugLogic's request for

13   an injunction under its claim for breach of contract is proper.

14        **1.      Inequitable Conduct Allegations**

15        DrugLogic asserts that inequitable conduct is adequately alleged because DrugLogic has

16   included in the SAA detailed allegations showing that the patentees misled the examiner by

17   mischaracterizing the prior art referenced in the specification and failing to provide copies of the

18   prior art to the examiner, which would have revealed to the examiner that any one of the prior art

19   references disclosed the full scope of the invention claimed in the '221 patent.  Opposition at 2, 5

20   (*citing Advanced Ion Beam Tech., Inc. v. Varian Semiconductor Equip. Assoc*., 721 F. Supp. 2d 62,

21   79 (D. Mass. 2010); *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 837 F.

22   Supp. 1444 (N.D. In. 1992)).  According to DrugLogic, Oracle mischaracterized the prior art at issue

23   by failing to disclose to the examiner that "*each* of [th]e prior art references contain[ed] each of the

24   four elements of the invention," namely 1) a thesaurus, 2) a hierarchy, 3) relations, and 4)clinical

25   terms.  *Id*. at 7 (emphasis in original).  DrugLogic further points to the Manual of Patent Examining

26   Procedures ("MPEP"), which requires that inventors and their attorneys disclose information

27   material to patentability, include such information in their information disclosure statement and

28                                              9

provide a "legible copy" of each publication listed in the information disclosure statement. *Id*. at 8 (citing MPEP § 1.56 and 37 C.F.R. 1.98).

DrugLogic rejects Oracle's assertion that it fully disclosed in the specification that the prior art at issue contained  the elements of the claimed inventions, arguing that "these references to the prior art were scattered throughout the specification in an attempt to hide the fact that the invention claimed in the '221 Patent was unpatentable." *Id*. at 9. "More importantly," DrugLogic asserts, "even when viewed together, the information contained in the specification does not disclose the true nature and scope of each piece of prior art." *Id*.  This omission is particularly significant, DrugLogic contends, because the examiner initially rejected each of the claims and only allowed the '221 Patent to issue when the limitation of clinical terms was added. *Id*. at 9-10 & Ex. A (Notice of Allowability).

With respect to Oracle's argument that DrugLogic has not alleged facts sufficient to show deceptive intent, DrugLogic contends that the Court already ruled on this question when it found that so long as DrugLogic adequately alleged knowledge of the prior art at issue by those who had a duty of disclosure, deceptive intent would also be adequately alleged. *Id*. at 5-6 (quoting August 8 Order at 18-19 ("the Court finds that if DrugLogic adequately pleads knowledge as described above, no additional pleading will be necessary with respect to deceptive intent under *Exergen*")).

DrugLogic rejects Oracle's reliance on *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 2006 WL 3780715 at * 3-4 (N.D. Cal. Dec. 20, 2006), arguing that that case is factually distinguishable because the material aspects of the prior art that the applicant allegedly failed to disclose to the examiner – a Japanese patent application – were, in fact, disclosed in an English translation of the Japanese Patent Office's evaluation of the application, which was provided to the Examiner. *Id*. at 10.  DrugLogic also contends that Oracle's reliance on *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1126, 1137 (E.D. Cal. 2002) is misplaced. *Id*. at 11.  According to DrugLogic, that case is not on point because it was decided after discovery and full development of the record, at which point the court concluded that there was no evidence that the information at issue was "intentionally obscured." *Id*. at 11.

### 2.      Unfair Competition Counterclaim

DrugLogic rejcts Oracle's assertion that under *Bank of the West*, common law unfair competition claims are limited to claims for "passing off."  *Id*. at 12.  According to DrugLogic, the central holding of the *Bank of the West* decision was that an insurance policy did not cover claims for advertising injury under California's Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and therefore, the statements in that case about common law unfair competition claims were dicta.  *Id*.  DrugLogic cites to a decision by this Court, *Hewlett-Packard Co. v. Cigna Prop. & Cas. Ins. Co.*, 1999 U.S. Dist. LEXIS 20655 (N.D. Cal. Aug. 24, 1999), in which the court held that in the context of an insurance coverage dispute, claims for "unfair competition" would be understood by a lay person to include claims not only for "passing off" but also for false advertising and other tortious conduct.  DrugLogic also points to a decision by the Ninth Circuit issued after the *Bank of the West*, *Duncan v. Stuezle*, 76 F.3d 1480 (9th Cir. 1996).  According to DrugLogic, in this case the Ninth Circuit held "that a plaintiff properly asserted a claim for common law unfair competition where he claimed that the defendant misappropriated certain proprietary information regarding, among other things, marketing strategy, revenue and methods by which a particular product was produced."  *Id*. at 13.

### 3.      Improper Remedies

#### a.      Compensatory Damages for Unfair Competition

DrugLogic does not dispute that compensatory damages are unavailable under the UCL and therefore, that disgorgement of profits is not an available remedy under the UCL.  *Id*.  It argues, however, that this remedy is available under its California's common law unfair competition claim, which survives for the reasons stated above.  *Id* (citing *Duncan*, 76 F.3d at 1489-1490).

#### b.      Injunctive Relief for Breach of Contract

DrugLogic argues that it has adequately alleged that pecuniary compensation is not adequate to remedy Oracle's alleged breach of contract and therefore, its request for an injunction under this claim is proper.  *Id*. at 14.  In particular, DrugLogic points to a number of allegations in its SAA,

including its allegations that Oracle "continues to make, import, use, sell, and offer to sell Argus Perceptive (the improperly reverse engineered product) to customers . . ., which is a violation of the prohibition in the Co-Marketing Agreement from selling, transferring, publishing, disclosing or otherwise making available any portion of DrugLogic's confidential information to a third party." *Id*. at 14-15 (citing SAA, ¶¶103, 119, 121, 125 and p. 29 ¶ B).  Based on these allegations, DrugLogics argues that it is merely requesting that "Oracle be compelled to specifically perform its continuing obligations under the Co-Marketing Agreement to refrain from certain activities."  *Id*. at 15.

    **D.    Reply**

    In its Reply brief, Oracle reiterates its argument that DrugLogic's allegations of inequitable conduct fail because they are implausible under *Twombley* and *Iqbal* in light of the disclosures in the specification.  Reply at 2-3.  Oracle rejects as "demonstrably wrong" DrugLogic's assertion that the disclosures in the specification are "scattered" throughout the specification and further asserts that the specification "makes clear that its description of each alleged prior art system applies to *all* of the alleged prior art systems."   *Id*. at 4-6.  Oracle also argues that the cases cited by DrugLogic – *Advanced Ion Beam* and *Golden Valley* – do not support DrugLogic's position.  *Id*. at 7-8.  Oracle argues that reliance on the patent prosecution guidelines in the MPEP misses the point because while those guidelines set forth the types of information an applicant is required to disclose, they do not address the types of facts that are sufficient to give rise to a reasonable  inference that the applicant intended to deceive the patent examiner.  *Id*. at 8.  Finally, as to the intent to deceive, Oracle rejects DrugLogic's contention that this question has already been decided by the Court. *Id*. at 2.  Rather, Oracle argues that the Court's holding regarding deceptive intent simply meant that "if DrugLogic adequately pled that the patent applicants knew about and withheld certain specific pieces of information about the allegedly withheld prior art, then they would also have adequately pled deceptive intent."  *Id*. at 2.

    As to the common law claim for unfair competition, Oracle argues neither *Hewlett-Packard Co. v. Cigna Prop. Cas. Ins. Co.* nor *Duncan v. Stuetzle* – the two cases cited by DrugLogic in

12

United States District Court

For the Northern District of California

1  support of its contention that it has stated a claim for common law unfair competition – redefined

2  common law unfair competition as set forth in *Bank of the West*. *Id*. at 9. Oracle also points out that

3  DrugLogic does not dispute that compensatory damages are not available for statutory unfair

4  competition under Cal. Bus. & Prof. Code §§ 17200 and therefore, to the extent the common law

5  unfair competition counterclaim fails, so too does DrugLogic's request for disgorgement of profits

6  on its unfair competition counterclaim.

7      Finally, as to the request for injunctive relief on DrugLogic's breach of contract claim,

8  Oracle asserts that DrugLogic has not made any attempt to allege facts showing that the

9  requirements for specific performance have been alleged. *Id*. at 10.

10 **III.   ANALYSIS**

11     **A.   Legal Standard**[3]

12         **1.   Motion to Dismiss**

13     Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and

14 plain statement of the claim showing that the pleader is entitled to relief." The complaint must give

15 the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic*

16 *Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To meet this requirement, the complaint must be

17 supported by factual allegations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). "While legal

18 conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory

19 statements are themselves sufficient, and such statements are not entitled to a presumption of truth.

20 *Id.* at 1949-50.

21     Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to

22 state a claim on which relief can be granted. A complaint may fail to show a right to relief either by

23 lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

24 theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

25

26

27         [3]The Court applies the same standards it applied on Oracle's previous motion to dismiss and
   strike, which is repeated here for the convenience of the reader.

28

**United States District Court**

For the Northern District of California

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)) (internal quotations omitted; emphasis in original). Together, *Iqbal* and *Twombly* represent "a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" *Fallcochia v. Saxon Mortg., Inc.*, 709 F. Supp. 2d 860, 865 (E.D. Cal. 2010) (citing *Iqbal*, 129 S. Ct. at 1950; *Erickson v. Pardus*, 551 U.S. 89 (2007)). Plausibility, as used in *Twombly* and *Iqbal*, refers to whether the non-conclusory factual allegations, when assumed to be true, "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. At 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

Where a court dismisses for failure to state a claim pursuant to Rule 12(b)(6), it "should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

### 2.      Motion to Strike

Under Rule 12(f) of the Federal Rules of Civil Procedure, the court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . ." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations omitted; citations omitted). However, motions to strike are generally disfavored. 5C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1380 (3d ed. 2004).

**United States District Court**
For the Northern District of California

1    **B.      DrugLogic's Inequitable Conduct Affirmative Defense and Counterclaim**

2          **1.      Inequitable Conduct Under *Exergen*[4]**

3          To state a claim for inequitable conduct, a party must allege that "(1) an individual associated

4    with the filing and prosecution of a patent application made an affirmative misrepresentation of a

5    material fact, failed to disclose material information, or submitted false material information; and (2)

6    the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 fn. 3.

7    *See also Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

8          Under *Exergen*, a party must plead inequitable conduct with particularity under Federal Rule

9    of Civil Procedure 9(b).  A pleading that merely recites the substantive elements of inequitable

10   conduct, without providing the specific factual bases for the allegations, is inadequate under Rule

11   9(b).  *Exergen*, 575 F.3d at 1326-27.  Thus, to plead inequitable conduct, a party must identify the

12   specific who, what, when, where, and how of the material misrepresentation or omission committed

13   before the patent examiner.  *Id.* at 1327.  Although knowledge and intent may be alleged more

14   generally, a party must still allege sufficient facts to justify an inference that a specific individual

15   had knowledge of the material information withheld or the falsity of the material misrepresentation

16   and withheld or misrepresented that information with the intent to deceive.  Fed. R. Civ. P. 9(b);

17   *Exergen*, 575 F.3d at 1328-29.

18         In *Exergen*, the court applied this standard and held that the defendant failed to plead

19   inequitable conduct with sufficient particularity.  *Id.* at 1329.  The court noted three factual

20   deficiencies in the defendant's proposed pleading.  *Id.*  First, the pleading failed to name the specific

21   individual who knew of the material information withheld from the PTO and withheld it

22   deliberately, instead referring generally to "Exergen, its agents and/or attorneys."  *Id.*  Second, the

23   pleading did not identify the specific claims, and which limitations in those claims, to which the

24   withheld references were relevant and where in those references material information could be

25   found.  *Id.*  The defendant therefore failed to plead the "what" and "where" of material information

26   _____

27         [4]For the convenience of the reader, the Court repeats here the pleading requirements for
     inequitable conduct under *Exergen*, which are also set forth in the Court's August 8 Order.

28                                                      15

United States District Court

For the Northern District of California

allegedly withheld from the PTO. *Id.* Finally, the pleading failed to identify the particular claim limitations that were allegedly missing from the information of record. *Id.* The defendant's allegations that the withheld references were "material" and "not cumulative to the information already of record" were insufficient to explain "why" the information withheld from the PTO was material and not cumulative and "how" an examiner would have used the information withheld. *Id.* at 1329-30.

The court in *Exergen* also held that the defendant failed to adequately plead underlying facts to support an inference of knowledge of the material information withheld and the specific intent to deceive the PTO. *Id.* at 1330. Although the defendant alleged that Exergen was aware of the withheld patent references, it failed to allege a factual basis to infer that a specific individual associated with the prosecution of the patent knew of the specific information in those references allegedly material to the claims of the patent at issue. *Id.* The court explained that because references can be quite long, "one cannot assume that an individual, who generally knew that a reference existed, also knew of the specific material information contained in that reference." *Id.* In addition, the court held that the defendant's allegation of deceptive intent "on information and belief" was insufficient. *Id.* Although a party may plead on "information and belief" under Rule 9(b), the party must still put forth sufficient facts upon which the belief is reasonably based. *Id.* The defendant did not provide any information or plausible reason for its belief, and the circumstances alleged did not suggest a "deliberate decision to withhold a known material reference," a "necessary predicate for inferring deceptive intent." *Id.* at 1330-31 (internal quotations omitted; citation omitted).

## 2. Whether DrugLogic States a Claim for Inequitable Conduct Under the *Exergen* Standard in the Second Amended Answer

Oracle argues that the Court should strike DrugLogic's Third Affirmative Defense and Dismiss its Fifth Counterclaim because DrugLogic has failed to plead inequitable conduct with sufficient particularity. Based on the standard set forth in *Exergen*, the Court agrees.

United States District Court

For the Northern District of California

In its August 8 Order, the Court held that: 1) DrugLogic had not adequately alleged the "what" and "where" of Oracle's alleged material omission; and 2) if DrugLogic, in its amended answer and counterclaims adequately alleged that the patent applicants knew about and withheld certain specific information about the allegedly withheld prior art, then they would also have adequately pled deceptive intent.  DrugLogic's amended allegations of inequitable conduct are inadequate because DrugLogic has not identified any specific information that was not disclosed in the specification.  Rather, the applicants disclosed all four of the claim elements to which the prior art is relevant in the two paragraphs of the specification that address this prior art, as well as the accompanying figures.  *See* '221 Patent, co. 4, lines 2-24 & Figs. 1, 2.  Under *Exergen*, the court may infer deceptive intent when the facts alleged suggest a "deliberate decision" to withhold known material information.  *Exergen*, 575 F.3d at 1331.  Here, the allegations do not support an inference that the applicants deliberately decided to withhold material because Oracle specifically disclosed in the specification not only the existence of the prior art references at issue but also that these references were hierarchical relational medical thesauruses; nor has DrugLogic identified any specific information in these references that was not disclosed.  *See Fiskars, Inc. v. Hunt MFG. Co.*, 221 F. 3d 1318, 1327 (Fed. Cir. 2000) (affirming district court's dismissal of inequitable conduct counterclaim following bench trial on basis that allegedly withheld information had been disclosed to examiner and stating that "[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner"); *Chip-Mender, Inc. v. Sherwin-Williams Co.*, 2006 WL 13058, at *7 (N.D. Cal. Jan. 3, 2006) (holding that defendant's counterclaim for *Walker Process* fraud based on allegation that patent applicant disclosed prior art reference to patent examiner but did not disclose certain details about that reference failed to state a claim because allegations did not support inference of intent to deceive); *Transclean Corp. v. Bridgewood Servs., Inc.*, 2000 WL 33175724, at *8 (D. Minn. Nov. 1, 2008) (holding after a bench trial that inequitable conduct counterclaim failed because allegedly withheld information had been disclosed in patent application and rejecting as "implausible, if not perverse" the defendant's contention that the applicants had only referenced the allegedly withheld prior art in

17

their application to "shield the substantive pertinence of that [prior art] from the Examiner's attention").

Accordingly, DrugLogic's inequitable conduct counterclaim is dismissed with prejudice under Rule 12(b)(6). The Court strikes under Rule 12(f) DrugLogic's inequitable conduct affirmative defense.

**C.     DrugLogic's Unfair Competition Counterclaim and Availability of Compensatory Damages on that Claim**

Oracle seeks dismissal of DrugLogic's Unfair Competition counterclaim to the extent it is based on common law, citing the California Supreme Court's *Bank of the West* decision for the proposition that under common law, "unfair competition" is limited to passing off.   The Court agrees.

The Court notes at the outset that *Bank of the West* addresses the meaning of common law unfair competition under California law in the context of an insurance coverage dispute, as do many of the cases that address the nature of common law unfair competition. In particular, in *Bank of the West*, the court addressed whether a general liability insurance policy providing coverage for damages arising out of unfair competition covered damages that were paid by Bank of the West in an action that was based on alleged unfair business practices in connection with a loan program. 2 Cal. 4th at 1258-1259. The court reasoned that because damages are not available for statutory unfair competition under Cal. Bus. & Prof. Code § 17203, the provision provided coverage only for common law unfair competition, on which damages are available. *Id*. at 1265-1266.   In that context, the court stated as follows:

> The common law tort of unfair competition is generally thought to be synonymous with the act of "passing off" one's goods as those of another. The tort developed as an equitable remedy against the wrongful exploitation of trade names and common law trademarks that were not otherwise entitled to legal protection. (See generally 1 Callmann, Unfair Competition Trademarks & Monopolies (4th ed. 1981) §§ 2.01–2.03.) According to some authorities, the tort also includes acts analogous to "passing off," such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market. (See Rest., Torts, §§ 711–743; see also 1 Callmann, supra, § 2.04.)

*Id*. at 1263.

18

**United States District Court**
For the Northern District of California

1    While arguably dicta, the California Supreme Court's characterization of common law unfair

2    competition in *Bank of the West* has been followed by the Ninth Circuit in the context of a motion

3    dismiss.  *See, e.g., Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008)

4    (affirming dismissal of common law unfair competition claim under *Bank of the West* on the basis

5    that no passing off was alleged); *Southland Sod Farms v. Stover Seed Co.* 108 F.3d 1134, 1147 (9th

6    Cir. 1997) (same).   These decisions undermine DrugLogic's assertion that the Court should follow

7    *Hewlett-Packard Co. v. Cigna Prop. & Cas. Ins.*, 1999 U.S. Dist. LEXIS 20655 (N.D. Cal. Aug. 24,

8    1999), in which the court concluded, in an insurance coverage context, that common law unfair

9    competition is not limited to passing off.  In *Hewlett Packard*, the court addressed whether an

10   insurer had a duty to defend and indemnify under a policy that covered "unfair competition" where

11   the claims for unfair competition in the underlying litigation were not based on allegations of

12   passing off. 1999 U.S. Dist. LEXIS 20655, at * 13 (N.D. Cal. Aug. 24, 1999).  Following *Bank of*

13   *the West*, the court reasoned that coverage extended only to common law unfair competition, which

14   can support a claim for damages.  *Id.*  However, it rejected as dicta the California Supreme Court's

15   characterization of common law unfair competition as limited to passing off.  *Id.*  Instead, it

16   addressed how a layperson would understand the term "unfair competition," looking beyond

17   California law to general treatises and the law of other jurisdictions.  *Id.*  For example, the court

18   quoted the statement in Prosser and Keaton on Torts that "[u]nfair competition . . . can be found

19   when the defendant engages in any conduct that amounts to a recognized tort and when that tort

20   deprives the plaintiff of customers or other prospects."  *Id.* (quoting 1013 (5th Ed. 1984)).   The Ninth

21   Circuit has not adopted a similar approach in cases decided after the *Hewlett-Packard* case,

22   including in *Sybersound Records*, cited above.  Therefore, the Court concludes that DrugLogic fails

23   to state a claim for common law unfair competition.

24   The Ninth Circuit's decision in *Duncan v. Stuetzle* does not stand for a contrary result.  In

25   that case, the complaint was filed in California state court and asserted claims for "1)

26   misappropriation of proprietary information, 2) unfair competition, and 3) civil conspiracy." 76 F.3d

27   at 1483-1484.   The complaint did not specify whether the claims were being asserted under state or

28

1  federal law. *Id.* The defendant removed to federal district court and the court had to determine

2  whether any of the claims were federal claims for the purposes of determining whether removal was

3  proper. *Id.* at 1484. The district court found that the complaint stated a claim under the Lanham Act

4  and concluded on that basis that federal jurisdiction existed. *Id.* On appeal, the Ninth Circuit held

5  that the district court had erred, concluding that each of the claims asserted – including the claim for

6  unfair competition – existed under California state law. *Id.* at 1486. In that context, the court held

7  that the plaintiff's claim for unfair competition was not a federal claim because "California provides

8  both statutory and common law causes of action for unfair competition." *Id.* at 1489. The court

9  further held that to the extent the plaintiff requested monetary damages, which are not available

10  under the UCL, this did not mean that the claim was a federal Lanham Act claim (which allows for

11  damages) because damages are also available on a California common law claim for unfair

12  competition. *Id.* at 1489.

13      The holding of *Duncan v. Stuezle* does not support DrugLogic's position for two reasons.

14  First, the court did not address whether common law unfair competition, under *Bank of the West*, is

15  limited to passing off; nor did it address whether the plaintiff's allegations were consistent with the

16  characterization of common law unfair competition claims under California law in *Bank of the West*.

17  *See* 76 F.3d at 1489-1490. Rather, the court merely stated that "[e]ach of these causes of actions

18  [statutory and common law unfair competition] provides a *theoretical* state law basis for Duncan's

19  requested relief." *Id.* at 1489 (emphasis added). Second, the allegations in *Duncan v. Stuezle* suggest

20  that the unfair competition claim in that case, though not expressly referred to as "passing off," did

21  *in fact* fall within the scope of common law unfair competition as set forth in *Bank of the West*. In

22  particular, the plaintiff in *Duncan v. Stuezle* included the following allegations in support of her

23  unfair competition claim:

24      20. On or about the month of January, 1990, in the County of San Luis Obispo, the
        Defendants obtained proprietary information regarding the "Footsie Wootsie" foot massage

25      chair, regarding, without limitation, the product's exterior and mechanical design, the
        Plaintiffs' company's marketing strategy, the product's recent income, and the methods by

26      which the machine was produced. The Defendants afterward began to produce their own foot
        massage chairs which closely resemble the chairs produced by Plaintiffs, and do not carry

27      any identifying labels or machine numbers to distinguish them from Plaintiffs' product.

28

1    Subsequently, the Defendants began manufacturing and distributing these duplications or
     reproductions of the "Footsie Wootsie" foot massage chair throughout, as far as is known at
2    present, the Southern California area.

3    21. The foot massage chairs manufactured, distributed, and sold by the Defendants are
     designed and calculated to deceive and mislead purchasers and consumers of Plaintiffs' foot
4    massage chair. Further, the Defendants' produce has actually deceived, and continues to
     deceive consumers, and caused them to use the chairs sold by the Defendants, believing that
5    the chairs were manufactured, sold and distributed by the Plaintiffs.

6    *Id*. at 1484. *Bank of the West* recognized that a common law unfair competition claim may include

7    claims such as the one asserted in *Duncan v. Stuezle*, namely, claims that are "analogous to 'passing

8    off,' such as the sale of confusingly similar products, by which a person exploits a competitor's

9    reputation in the market." 2 Cal. 4th at 1263.  In contrast, no such analogous claim is alleged here.

10       Accordingly, the Court concludes that DrugLogic's claim for unfair competition fails to state

11   a claim because no passing off, or any analogous claim, is alleged.  Further, because it is undisputed

12   that a statutory unfair competition claim under the UCL cannot give rise to compensatory damages,

13   the Court strikes DrugLogic's request for disgorgement of profits on Counterclaim Six.

14       **D.       Availability of Injunctive Relief on Breach of Contract Claim**

15       Oracle asserts that DrugLogic's request for injunctive relief on its breach of contract

16   counterclaim should be stricken, citing to the elements required under California law for specific

17   performance that are set forth in *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d

18   571, 575 (1983).  In *Tamarind Lithography*, the court of appeals held that the trial court had erred in

19   denying a request for specific performance in addition to an award of damages by a jury following a

20   jury trial.  143 Cal. App. 3d at 575.  The court stated as follows:

21       (1)The availability of the remedy of specific performance is premised upon well established
         requisites. These requisites include: A showing by plaintiff of (1) the inadequacy of his legal
22       remedy; (2) an underlying contract that is both reasonable and supported by adequate
         consideration; (3) the existence of a mutuality of remedies; (4) contractual terms which are
23       sufficiently definite to enable the court to know what it is to enforce; and (5) a substantial
         similarity of the requested performance to that promised in the contract.
24

25   *Id*. Oracle contends that DrugLogic has not adequately pled each of these specific elements.  It has

26   not, however, cited case law establishing that it is appropriate to strike a request for specific

27   performance at the pleading stage of the case, especially where, as here, a party has included general

28                                                    21

United States District Court
For the Northern District of California

1   allegations that a contract was breached and that there is a threat of continued harm that renders

2   legal remedies inadequate.  Given that motions to strike are disfavored, the Court declines to strike

3   DrugLogic's request for specific performance on its breach of contract claim.

4   **IV.     CONCLUSION**

5        For the reasons stated above, Oracle's Motion is GRANTED IN PART and DENIED IN

6   PART as follows:

7        1) The Motion is GRANTED as to DrugLogic's inequitable conduct counterclaim

8   (Counterclaim X) and affirmative defense (Third Affirmative Defense) which are, respectively,

9   dismissed under Rule 12(b)(6) and stricken under Rule 12(f).

10       2) The Motion is GRANTED as to DrugLogic's unfair competition counterclaim

11  (Counterclaim VI) as follows: to the extent that claim is based on common law unfair competition, it

12  is dismissed under Rule 12(b)(6); the Motion is also GRANTED as to DrugLogic's request for

13  disgorgement of profits on DrugLogic's unfair competition counterclaim, which is stricken under

14  Rule 12(f).

15       3) The Motion is DENIED as to DrugLogic's request for specific performance on its breach

16  of contract counterclaim (Counterclaim II).

17       IT IS SO ORDERED.

18

19  Dated: November 16, 2011

20

21  _____

22  JOSEPH C. SPERO
    United States Magistrate Judge